| | |
|---|---|
| RILEY KIRK, ZACHARY SILMAN, BRANDON LOHMAR, MATTHEW DEPAOLA, and CAMERON BARBOUR )<br><br>Plaintiff, )<br><br>v. )<br><br>QUEEN CITY COURT BUILDERS, LLC and SPEICHER PERFORMANCE TENNIS, LLC )<br><br>Defendant. ) | COMPLAINT |

Plaintiffs, Riley Kirk ("Kirk"), Zachary Silman ("Silman"), Brandon Lohmar ("Lohmar"), Matthew DePaola ("DePaola"), and Cameron Barbour ("Barbour") (collectively, "Plaintiffs"), by and through counsel, bring this action for violations of the overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, against Queen City Court Builders, LLC ("QCCB") and Speicher Performance, Tennis, LLC ("SPT") (collectively, "Defendants"). Barbour additionally brings a claim for violations of the North Carolina Wage and Hour Act ("NCWHA"), N.C.G.S. § 95-25 *et seq*.

## NATURE OF PLAINTIFFS' CLAIMS

1. Plaintiffs bring an FLSA claim pursuant to 29 U.S.C. § 216(b) and seek to recover unpaid overtime compensation and statutory penalties.

2. Plaintiffs' FLSA claim results from Defendants' policy and practice of failing to pay Plaintiffs an overtime premium rate of pay for all hours worked over forty in a workweek.

3. Barbour's NCWHA claim results from Defendants' failure to pay all regular wages earned either at the time they were due or after separation of employment.

## THE PARTIES

4. Kirk is an adult individual who is a resident of Concord, North Carolina.

5. Silman is an adult individual who is a resident of Charlotte, North Carolina.

6. Lohmar is an adult individual who is a resident of Charlotte, North Carolina.

7. DePaola is an adult individual who is a resident of Charlotte, North Carolina.

8. Barbour is an adult individual who is a resident of Concord, North Carolina.

9. Defendant QCCB is a domestic limited liability company registered and in good standing in the state of North Carolina. Defendant QCCB is co-owned by President Samuel B. Kilgore ("Kilgore") and Vice President Jeremy Speicher ("Speicher").

10. Defendant SPT is a foreign limited liability company registered and in good standing with the State of North Carolina. Upon information and belief, SPT is co-owned by Speicher and Kilgore.

## JURISDICTION AND VENUE

11. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for claims brought under the FLSA, 29 U.S.C. § 201 *et seq.*

12. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendant NCWHA claim because it arises out of the same nucleus of operative facts giving rise to Barbour's FLSA claims.

13. This Court has personal jurisdiction because Defendants' primary places of business are located in Mecklenburg County, which is within this judicial district.

14. Venue is proper in this judicial district because Defendants' primary places of business are in this district and because the unlawful acts or omissions alleged occurred in Mecklenburg County, North Carolina.

## COVERAGE ALLEGATIONS

15. At all times hereinafter mentioned, Defendants were "employers" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

16. At all times hereinafter mentioned, Defendants were an "enterprise" within the meaning of Section 3(r) of the FLSA 29 U.S.C. § 203(r).

17. At all times hereinafter mentioned Defendants were an integrated enterprise in that they conducted related activities and performed under unified operations or common control for a common business purpose.

18. At all times hereinafter mentioned, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

19. At all times hereinafter mentioned, Plaintiffs have been "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e).

20. At all times hereinafter mentioned, Plaintiffs were employees engaged in interstate commerce within the meaning of 29 U.S.C. § 207(a). During their employment with Defendants, Plaintiffs operated equipment produced and transported in interstate commerce, traveled on interstate highways, and crossed state lines to perform work in other states.

21. At all times hereinafter mentioned, Defendants were the joint employers of Plaintiffs within the meaning of 29 C.F.R. § 791.2.

22. At all times hereinafter mentioned, Defendants were "employers" within the meaning

of Section 95-25.2(5) of the NCWHA, N.C.G.S § 95-25.2(5).

23.    At all times hereinafter mentioned, Barbour was an "employee" within the meaning of Section 95-25.2(4) of the NCWHA N.C.G.S. § 95-25.2(4).

## PLAINTIFFS' FACTUAL ALLEGATIONS

24.    Defendant QCCB is a construction company specializing in building tennis courts, basketball courts, playgrounds, and recreation areas, primarily in North Carolina and South Carolina.

25.    Defendant SPT is a racquet sports programming and management company that provides a variety of sport and fitness activities for members and, upon information and belief, owns, operates, or is the same entity as the Prosperity Athletic Club located in Charlotte, North Carolina (the "Club").

26.    Defendants hired Kirk as a Laborer/Court Builder on or about September 16, 2020, and paid him solely on an hourly basis for this role. Defendant SPT additionally hired Kirk to perform court maintenance work at the Club for a flat rate. Kirk voluntarily resigned his employment with both Defendants in or about April 2022.

27.    Defendants hired Silman as a Laborer/Court Builder on or about November 23, 2020. Defendants paid Silman solely on an hourly basis for his work in this role. Defendant SPT additionally hired Silman to perform court maintenance work at the Club for a flat rate. Silman voluntarily resigned his employment with both Defendants on or about February 26, 2022.

28.    Defendants hired Lohmar as a Laborer/Court Builder on or about December 7, 2020 and paid him solely on an hourly basis until Lohmar voluntarily resigned his employment with both Defendants on or about February 26, 2022.

29.    Defendants hired DePaola as a Laborer/Court Builder on or about August 17, 2020. Defendants paid DePaola solely on an hourly basis for his work in this role. Defendant SPT additionally hired DePaola to perform court maintenance work at the Club for a flat rate. DePaola

voluntarily resigned his employment with both Defendants on or about February 28, 2022.

30. Defendants hired Barbour as a Laborer/Court Builder on or about September 28, 2021. Defendants paid Barbour solely on an hourly basis until Barbour voluntarily resigned his employment with both Defendants on or about November 26, 2021.

31. Both SPT and QCCB operate out of the Club. Both Defendants listed the Club's address as their principal office on their most recent annual reports filed with the North Carolina Secretary of State.

32. QCCB's 2022 annual report filed with the North Carolina Secretary of State lists Kilgore as President and Speicher as Vice President.

33. SPT's 2023 annual report filed with the North Carolina Secretary of state lists Speicher as President. Upon information and belief, Kilgore is co-owner of SPT.

34. Plaintiffs performed Laborer/Court Builder work for outside clients but also performed the same work on the courts at the Club using QCCB equipment. On any given day, Speicher and Kilgore jointly determined which employees would perform work at the Club and which Plaintiffs would travel to an outside job. On days in which QCCB had no work to perform for outside clients, Defendants would direct Plaintiffs to work on the courts at the Club.

35. Defendants manipulated job scheduling and rotation of workers in order to circumvent overtime requirements. When performing Laborer/Court Builder work for outside clients, Plaintiffs generally reported their hours to Kilgore and were paid by QCCB. When performing Laborer/Court Builder work at the Club, Plaintiffs generally reported hours to Speicher and were paid by SPT. However, on at least one occasion, Plaintiffs (excluding Barbour and, upon information and belief, Silman) were asked to report hours for Laborer/Court Builder work performed at the Club to Kilgore and were paid for those hours by QCCB.

36. When performing court maintenance work at the Club, Kirk, Silman, and DePaola

5

were paid by SPT.

37. Defendants, as joint employers, unlawfully classified Plaintiffs as "independent contractors" in 2020 and 2021, even though Defendants supervised, maintained substantial control, and reserved the right to control them, the conditions of their work, and the performance of their duties. Defendants did not withhold applicable payroll taxes from Plaintiffs' paychecks in 2020 and 2021. Defendants also issued 1099-NEC forms to Plaintiffs for 2020 and 2021. In 2022, Defendants issued W-2s to and withheld applicable payroll taxes for Plaintiffs, excluding Barbour, who did not work for Defendants in 2022.

38. Plaintiffs performed work that was an integral part of Defendants' business. QCCB primarily earned revenue by building, resurfacing and maintaining recreational areas, i.e., the vast majority of work that Plaintiffs performed for Defendants. At all relevant times, Defendant QCCB employed only five to eight workers to perform these tasks, including Plaintiffs.

39. Plaintiffs had little or no opportunity for individual profit or loss related to their work with Defendants. Defendants paid each Plaintiff a fixed hourly rate of pay for all time worked as Laborers/Court Builders, including time over 40 hours in any given workweek.

40. Plaintiffs did not make any significant investment in relation to their work with Defendants. Defendants reimbursed Plaintiffs for purchasing equipment, supplies, and fuel for the QCCB truck. Prior to their employment with Defendants, Plaintiffs had little to no experience in Defendants' field of work and received training from Defendants' employees after beginning employment with Defendants.

41. Plaintiffs had no control over pricing for Defendants' clients.

42. Defendants required Plaintiffs to meet at the Club before each job to collect the QCCB truck and equipment. Plaintiffs used QCCB-owned equipment to perform their jobs.

43. Plaintiffs were not under contract and were expected to return to work for Defendants

each week until and unless the employment relationships were severed.

44. Plaintiffs did not perform job duties that would permit Defendant to lawfully classify them as exempt under the FLSA.

45. Defendants regularly required Plaintiffs to work in excess of 40 hours in any given workweek.

46. Defendants paid Plaintiffs a straight hourly rate for all time worked as Court Builders/Laborers, including time worked in excess of 40 hours in any given workweek.

47. By way of example, Lohmar worked a total of approximately 93.17 hours, which he reported to Kilgore and paid by QCCB, during the two-week pay period of April 5, 2021 – April 18, 2021, consisting of 52 hours in one week and 41.17 hours the next. At a rate of $12.50 per hour, Defendants should have paid Lohmar $1,246.94 (80 regular hours times $12.50 plus 13.17 overtime hours times $18.75). However, QCCB paid Lohmar only $1,164.58 for this pay period, which is roughly equal to the total number of hours Lohmar worked times his regular rate ($1,164.63). Therefore, QCCB failed to pay approximately $82.36 in overtime premiums for this pay period. Lohmar performed an additional approximately 6.07 Laborer/Court Builder hours at the Club on April 14, 2021. Lohmar reported these hours to Speicher. These hours were paid by SPT and entitle Lohmar to an additional approximately $37.94 in unpaid overtime premiums. Together, Defendants failed to pay approximately $120.30 in overtime premiums for this pay period.

48. As another example, Barbour worked a total of approximately 85.21 hours during the two-week pay period of October 4, 2021 – October 17, 2021, consisting of 29.44 hours in one week and 55.77 hours the next. At a rate of $12.50 per hour, Defendants should have paid Barbour $1,163.69 (69.44 regular hours times $12.50 plus 15.77 overtime hours times $18.75). However, Defendants paid Barbour only $1,065.00 for this pay period, which is roughly equal to the total number of hours Barbour worked times his regular rate ($1,065.13). Therefore, Defendants failed

7

to pay approximately $98.69 in overtime premiums for this pay period.

49. DePaola regularly worked more than 40 hours per week for Defendants. For example, DePaola worked approximately 46.5 hours during the week of October 5–11, 2020 and approximately 43 hours during the week of October 12–18, 2020. Defendants paid DePaola a straight time rate for each of DePaola's worked hours and did not pay him the overtime premium for any hours worked above 40 in a week.

50. Kirk and Silman regularly worked the same or approximately the same hours that Lohmar, Barbour, and DePaola regularly worked. However, Defendants paid Kirk and Silman a straight time rate for each hour worked and did not pay Kirk and Silman the overtime premium for any hours worked above 40 in a week.

51. Defendants' violation of the FLSA was willful. At some point in or about the first six months of his employment, DePaola spoke to Kilgore about the fact that Plaintiffs were not receiving overtime pay. Kilgore told DePaola, "We don't make enough to pay you overtime." On or about October 17, 2020, DePaola texted Kilgore to report his hours for the pay period. DePaola texted, "…and another question is there is no overtime is there (sic)?" Kilgore did not respond to this text.

52. Pursuant to FLSA, 29 C.F.R. § 516, and NCWHA, § 95-25.15(b), Defendants are required to maintain a record of each hour, day, and week worked by any employee.

53. The exact number of hours worked by Plaintiffs' will only be known through discovery.

54. On or about November 27, 2021, Barbour texted Kilgore asking for his final paycheck. Kilgore stated that Barbour could pick up his check at the Club. Barbour responded, "heard [I]'ll grab it [M]onday afternoon." Kilgore then responded, "Try me again and you'll be waiting a lot longer than Monday with your immature 'heard' bullshit. On that note I'll let you know when it's ready and it won't be Monday. I don't operate on your schedule. Period."

8

Case 3:23-cv-00360-RJC-SCR   Document 1   Filed 06/15/23   Page 8 of 10

55. On or about December 13, 2021, Barbour texted Kilgore to remind him that he still owed Barbour his last paycheck. Despite this reminder, Defendants failed entirely to pay Barbour his final paycheck.

## Plaintiffs' First Cause of Action
### (Violation of FLSA – Overtime)

56. Plaintiffs reallege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

57. Defendants' violation of the FLSA arises from their failure to pay all overtime wages earned by Plaintiffs.

58. Defendants violated the FLSA by failing to pay Plaintiffs an overtime premium rate of pay for all hours worked over 40 in a workweek.

59. Defendants' violation of the FLSA was willful.

## Plaintiff Barbour's Second Cause of Action
### (Violation of NCWHA – Unpaid Wages)

60. Barbour realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

61. Defendants violated N.C.G.S. § 95-25.6–7 by failing to pay Barbour his earned wages, either when Barbour earned those wages or after separation.

62. Defendants' violation of the NCWHA in failing to pay Barbour's earned wages was not in good faith.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

a) An Order pursuant to Section 216(b) of the FLSA finding Defendants jointly and severally liable for unpaid overtime wages due to Plaintiffs and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs;

b) An Order awarding the costs of this action;

c) An Order awarding reasonable attorneys' fees;

d) A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the overtime requirements of the FLSA;

e) An Order pursuant to the NCWHA finding Defendants liable for unpaid regular wages due to Barbour and for liquidated damages in equal amount to the unpaid regular wages found due to Barbour;

f) A Declaration and finding by the Court that Defendants did not act in good faith when they violated provisions of the NCWHA by failing to comply with the statutory requirements regarding payment of Barbour's earned regular wages;

g) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

h) An Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted Thursday, June 15, 2023.

s/ Ethan L. Slabosky
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
Ethan L. Slabosky, NCSB #59555
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038
Email: phil@gibbonslg.com
corey@gibbonslg.com
ethan@gibbonslg.com

*Attorneys for Plaintiff*
